# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

MARY ANN STEWART,

    Plaintiff,

v.                                                         Case No: 5:17-cv-380-Oc-30PRL

CHESAPEAKE LIFE INSURANCE
COMPANY,

    Defendant.

## ORDER[1]

Mary Ann Stewart was the owner and beneficiary of a life insurance policy for which her adult son was the insured. Stewart claims she applied for a $100,000 policy but that Chesapeake Life Insurance Company issued a policy worth only $46,632, which she discovered after her son's death. Stewart now sues Chesapeake for breach of contract and a declaration. Because Chesapeake paid what was owed under the policy, Stewart's action must be dismissed.

## FACTUAL BACKGROUND

In January 2007, Stewart applied for a $100,000 life insurance policy for which she was the owner and beneficiary, and for which her son, John T. Stewart II, was the insured. (Doc. 2, ¶¶ 6, 8). On the application, which Stewart attached to the Complaint, she checked the box indicating that her son had not "used any tobacco or nicotine products within the

---

[1] This Order is amended only as to Paragraph 2, on page 5.

last" 12 months. (Doc. 2, p. 25). She also indicated that no personal health interview with her son had yet been completed. (Doc. 2, p. 25). In the "Underwriting Information" portion of the application, Stewart checked another box indicating, "If application is approved other than as required, keep premium as shown (Decrease face amount)." (Doc. 2, p. 27). Stewart did not check the Underwriting Information box that read, "If application is approved other than as required, issue face amount as shown (Increase Premium)." (Doc. 2, p. 27).

On January 23, 2007, Stewart's son completed the personal health interview. (Doc. 2, pp. 32–36). On the questionnaire, Stewart's son indicated that he had smoked in the last 36 months. (Doc. 2, p. 33). In clarifying his response, Stewart's son indicated that he last smoked on January 23, 2007—the day he completed the personal health interview—and that he smoked a pack of cigarettes each day. (Doc. 2, p. 36).

On February 19, 2007, Stewart's son executed an application amendment. (Doc. 2, p. 29). The amendment states that the application was being amended to reduce the amount of insurance to $46,632, and to indicate that Stewart's son smoked cigarettes. (Doc. 2, p. 29). Notably, there is a line for the owner of the policy to sign the amendment if the owner is "other than the applicant," which Stewart did not sign. (Doc. 2, p. 29). Stewart alleges that she was never notified of these changes by Chesapeake. (Doc. 12, ¶¶ 12–16).

On January 16, 2016, Stewart's son died. (Doc. 2, ¶ 9). Stewart made a claim for the life insurance benefits, which she still believed to be $100,000, but Chesapeake only issued her a payment of $46,632. (Doc. 2, ¶¶ 10–11).

# **MOTION TO DISMISS STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Furthermore, they must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson*, 551 U.S. at 93–94.

Legal conclusions, though, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

**DISCUSSION**

Chesapeake argues this action should be dismissed for failure to state a claim.[2] The gist of their argument is that it paid the death benefit owed under the terms of the policy. Because Stewart admits Chesapeake paid the entire death benefit, Chesapeake argues it could not have breached the policy.[3]

The Court agrees with Chesapeake that Stewart's Complaint fails to state a claim for several reasons. First, under Florida law, the provisions of an insurance policy control over the application. *Prudential Ins. Co. of Am. v. Prescott*, 115 Fla. 365, 372, 156 So. 109, 112 (Fla. 1933) (quoting the Iowa Supreme Court for the proposition that "when there is a conflict between the provisions of the policy and the statements contained in the application the former controls."); *see also State Farm Mut. Auto. Ins. Co. v. Mallard*, 548 So. 2d 733, 735 (Fla. Dist. Ct. App. 1989). Here, the policy unambiguously states that it was issued with a death benefit of $46,632, which Stewart alleges Chesapeake paid. So it is clear that Chesapeake did not breach the plain terms of the policy by paying $46,632 instead of $100,000.

Second, Stewart's argument that the she never authorized the change is unavailing. On the application, she noted that her son had not yet completed a personal health interview, which was required before the policy could be issued. Stewart also indicated

---

[2] The Court previously ordered the parties to brief the issue of whether it had subject-matter jurisdiction. Based on Chesapeake's response (Doc. 12), the Court is convinced subject-matter jurisdiction exists.

[3] Chesapeake also argues Stewart's claims are barred by the statute of limitations. The Court does not reach this issue.

that if the application was approved with different terms, then she wanted the death benefits to be *decreased* and the premium kept as shown. She did this even though she had the option of keeping the death benefits *as shown*, with a correlating increase in the premium to be charged. So when Chesapeake learned that her son was a pack-a-day smoker even though Stewart indicated he did not smoke, Chesapeake did as Stewart directed and decreased the death benefit while keeping the premium the same. The application Stewart signed also provided that her acceptance of the policy would constitute ratification of any changes made by Chesapeake. (Doc. 2, p. 31). So although her signature was missing from the application amendment, she had already provided authorization for Chesapeake to take the action it did—lowering the death benefit based on information it learned during the underwriting process.

Finally, Stewart's allegations that she had no notice of the changes and that the policy was never delivered to her are immaterial to her causes of action. Even assuming the policy was never delivered to Stewart and she never knew of the death benefit decrease despite paying premiums for nine years, Chesapeake complied with the unambiguous terms of the policy by paying the required death benefit. That means Chesapeake did not breach the policy, and no declaration is required to determine how much was owed.

Accordingly, it is ORDERED AND ADJUDGED that:

1. Defendant Chesapeake Life Insurance Company's Motion to Dismiss (Doc. 3) is GRANTED.

2. Plaintiff Mary Ann Stewart's Complaint (Doc. 2) is DISMISSED WITH PREJUDICE.

3. All pending motions are denied as moot.

4. The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida, this 4th day of October, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record